# Illinois Official Reports

## Appellate Court

*Underwood v. City of Chicago*, 2017 IL App (1st) 162356

| | |
|---|---|
| Appellate Court Caption | MICHAEL W. UNDERWOOD, JOSEPH M. VUICH, RAYMOND SCACCHITTI, ROBERT McNULTY, JOHN E. DORN, WILLIAM J. SELKE, JANIECE R. ARCHER, DENNIS MUSHOL, RICHARD AGUINAGA, JAMES SANDOW, CATHERINE A. SANDOW, MARIE JOHNSTON, and 338 Other Named Plaintiffs Listed, Plaintiffs-Appellants, v. CITY OF CHICAGO, a Municipal Corporation, Defendant, and TRUSTEES OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO; TRUSTEES OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO; TRUSTEES OF THE MUNICIPAL EMPLOYEES' ANNUITY AND BENEFIT FUND OF CHICAGO; and TRUSTEES OF THE LABORERS AND RETIREMENT BOARD EMPLOYEES' ANNUITY AND BENEFIT FUND OF CHICAGO, *et al.*, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket Nos. 1-16-2356, 1-16-2357 cons. |
| Filed | June 29, 2017 |
| Rehearing denied | August 3, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-17450; the Hon. Neil H. Cohen, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. |
| Counsel on Appeal | Clinton A. Krislov and Kenneth T. Goldstein, of Krislov & Associates, Ltd., of Chicago, for appellants. |
| | Stephen R. Patton, Corporation Counsel, of Chicago (Jane Elinor Notz, Benna Ruth Solomon, Myriam Zreczny Kasper, and Sara K. Hornstra, Assistant Corporation Counsel, of counsel), and Richard J. Prendergast and Michael T. Layden, of Richard J. Prendergast, Ltd., and Joseph M. Gagliardo and Jennifer A. Naber, and James J. Convery, of Laner Muchin, Ltd., all of Chicago, for appellees. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion. Presiding Justice Connors and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    This case is back before the court following another round of rulings by the circuit court concerning plaintiffs' rights to healthcare coverage. Plaintiffs are multiple categories of City of Chicago (City) retirees who have participated in the City's medical benefits plan and received some level of healthcare coverage from the City over the years. The City has undertaken to eliminate the healthcare benefits that many of the plaintiffs previously enjoyed, while the plaintiffs have fought to retain the benefits under a number of legal and equitable principles. The circuit court largely ruled in favor of the City and dismissed most of the plaintiffs' claims. We affirm in part, reverse in part, and remand the case for further proceedings.

¶ 2                                  BACKGROUND

¶ 3    The genesis of this case dates all the way back to the 1960s, but most of the relevant events occurred between 1983 and the present. The City has long been providing fixed-rate subsidized healthcare to its retirees through the City of Chicago Annuitant Medical Benefits Plan. In 1983, the City agreed to provide a subsidy for the Police and Firefighter funds for a healthcare benefit. Under that plan, the respective annuity and benefit funds (the Funds) would provide a subsidy to the City to cover a set amount of the participants' healthcare ($55 per month for non-Medicare-eligible retirees and $21 per month for Medicare-eligible retirees). Ill. Rev. Stat. 1983, ch. 108½, ¶ 5-167.5. The contributions themselves were funded by a City tax. The municipal employees and the laborers and retirement board employees were brought under the same construct as the police and firefighters in 1985, just at a smaller average subsidy ($25 per month). Ill. Rev. Stat. 1985, ch. 108½, ¶ 11-160.1.

¶ 4        In 1987, the City began its quest to stop subsidizing retiree healthcare. The City notified the Funds that it would stop providing healthcare benefits on the first day of 1988, and it filed suit in the circuit court of Cook County (City of Chicago v. Korshak, No. 87 CH 10134 (Cir. Ct. Cook Co.)), seeking a declaration that it had no obligation to continue providing coverage. The Funds counterclaimed, seeking a declaration that the City was required to continue covering healthcare costs. A group of retirees intervened and were certified as the "Korshak subclass." The Korshak subclass is comprised of individuals who retired on or before December 31, 1987. The "Window subclass" was certified later and is comprised of employees that retired after December 31, 1987, but before August 23, 1989. The retirees counterclaimed, seeking a declaration that they were entitled to lifetime healthcare coverage.

¶ 5        Before that case was adjudicated on the merits, the City and the Funds settled. The individual retirees were not parties to the settlement. The settlement, which was adopted legislatively as part of the Pension Code (Ill. Rev. Stat. 1989, ch. 108½, ¶ 5-167.5 (as amended by Pub. Act 86-273, § 1 (eff. Aug. 23, 1989))), amended the 1983 and 1985 fixed-rate subsidy statutes to set forth the City's new obligations. The amendment stated that for the period from 1988 through the end of 1997, the Funds would continue to pay a subsidy and the City was also responsible for 50% of the retirees' healthcare coverage costs. The parties agreed to "negotiate in good faith toward achieving a permanent resolution of this dispute" until the end of the settlement period and that "[f]ailing agreement, the parties shall be restored to the same legal status which existed as of October 19, 1987." The amendment to the Pension Code explicitly stipulated that the obligations set forth therein "shall terminate on December 31, 1997." Ill. Rev. Stat. 1989, ch. 108½, ¶ 5-167.5(e) (as amended by Pub. Act 86-273, § 1 (eff. Aug. 23, 1989)). The trial court in that *Korshak* case did not address the individual participants' claim for permanent coverage and imposed the settlement agreement on them.

¶ 6        When no permanent solution was reached by 1997, the City again sought to end its coverage obligations altogether. The case ended up before this court, where we held that "under the express terms of the settlement agreement, the [retirees] are entitled to reargue the claims originally asserted" in the 1987 case. *Ryan v. City of Chicago*, No. 1-98-3465, slip order at 7 (June 15, 2000) (unpublished order under Supreme Court Rule 23). Again before the claims were adjudicated on the merits, the parties settled. After settlement extensions and corresponding amendments to the Pension Code in 1997, 2002, and 2003 (Pub. Act 90-32, § 5 (eff. June 27, 1997); Pub. Act 92-599, § 10 (eff. June 28, 2002); Pub. Act 93-42, § 5 (eff. July 1, 2003)), all of which were substantially similar to the first settlement and all with the same limiting language and expirations, the City conveyed its intent to end healthcare benefits for retirees once and for all.

¶ 7        In the 2003 agreement, the parties agreed that, at the expiration of that agreement, "the City may offer additional healthcare plans at its own discretion and may modify, amend, or terminate any of such additional healthcare plans at its sole discretion." The agreement created the Retiree Health Care Benefits Commission (RHBC) that would make recommendations concerning the state of retiree health care benefits, the costs of those benefits, and issues affecting the retirees' benefits to be offered after July 1, 2013. The 2003 agreement was set to expire in 2013. Before the agreement expired, the City notified retirees that, on the recommendation of the RHBC, once the agreement expired in 2013, the City was going to begin to reduce healthcare benefits until January 2017, at which time the City would end the plan in its entirety. Certain classes of employees, like those in the Korshak and Window

subclasses, would retain healthcare benefits under the City's new plan but others, particularly those hired after 1989, would not.

¶ 8    Plaintiffs attempted to revive the 1987 lawsuit in the circuit court of Cook County, but the court ordered them to interpose their claims in a newly-filed complaint (this case). Once the new case was filed, the City removed it to federal court. After the federal district court dismissed the retirees' claims (*Underwood v. City of Chicago*, No. 13 C 5687, 2013 WL 6578777, at *17 (N.D. Ill. Dec. 13, 2013)), the United States Court of Appeals for the Seventh Circuit affirmed the dismissal of the federal claims, but remanded the matter to state court for a resolution of the "novel issues of state law." *Underwood v. City of Chicago*, 779 F.3d 461, 464-465 (7th Cir. 2015).

¶ 9    Back in state court, the City filed a motion to dismiss. The plaintiffs' third amended complaint has claims for improper diminution of pension benefits under the Illinois Constitution (count I), breach of contract (count II), estoppel (count III), impairment of contract (count V), and equal protection and special legislation challenges to the City's plan of action (counts VI and VII).[1] The parties and the courts have discussed the retirees as broken down into four subclasses: (1) the Korshak subclass, made up of people who retired before December 31, 1987; (2) the Window subclass, made up of people who retired between January 1, 1988 and August 23, 1989; (3) subclass three, made up of people who retired on or after August 23, 1989; and (4) subclass four, made up of people who were hired after August 23, 1989.

¶ 10    While the motion to dismiss was still pending and before the trial court entered a judgment on the merits of plaintiffs' claims, plaintiffs filed a motion for a preliminary injunction. The trial court denied the sought-after injunctive relief. Plaintiffs appealed that ruling and, after examining plaintiffs' claims insofar as they related to preliminary injunctive relief, we affirmed. *Underwood v. City of Chicago*, 2016 IL App (1st) 153613, ¶ 32, *appeal denied*, No. 121498 (Ill. Jan. 25, 2017).

¶ 11    In resolving the motions to dismiss, the trial court held that plaintiffs could not state a claim on the 1987, 1997, or 2003 amendments under the Illinois Constitution's pension protection clause because the settlements on which the claims are based provided only time-limited benefits. The trial court did, however, hold that the members of the Korshak subclass, the Window subclass, and subclass three could state a claim based on the 1983 and 1985 amendments that did not contain the same limiting language that the subsequent amendments did. The trial court dismissed the remaining claims, denied the plaintiffs' motion for class certification, and made a finding that there was no just reason to delay appeal of its judgment on the claims it dismissed (see Ill. S. Ct. R. 304(a) (eff. Jan. 1, 2006)). The retirees later filed a renewed motion for a preliminary injunction, which the trial court also denied.

¶ 12    The case is now before the court on an interlocutory appeal principally concerning the propriety of the trial court's ruling on motions to dismiss filed by the City and the Funds. The retirees' renewed request for injunctive relief is also part of their appeal.

---

[1]Count IV was a claim for a due process violation under federal law. It was dismissed in the federal case and did not call for an answer from the defendants in this case.

- 4 -

¶ 13                                          ANALYSIS

¶ 14        The trial court dismissed the retirees' claims under section 2-615 of the Illinois Code of Civil Procedure. A section 2-615 motion to dismiss attacks the sufficiency of a complaint and raises the question of whether a complaint states a cause of action upon which relief can be granted. 735 ILCS 5/2-615 (West 2012); *Fox v. Seiden*, 382 Ill. App. 3d 288, 294 (2008). All well-pleaded facts must be taken as true, and any inferences should be drawn in favor of the nonmovant. *Jones v. Brown-Marino*, 2017 IL App (1st) 152852, ¶ 19. A section 2-615 motion to dismiss should not be granted unless no set of facts could be proved that would entitle the plaintiff to relief. *Id.* We review the dismissal of a plaintiff's claims *de novo*. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55.

¶ 15                       I. Claims Under the Pension Protection Clause (Count I)

¶ 16        The pension protection clause of the Illinois Constitution has been the focus of considerable public attention recently. As the State, cities, and other public employers attempt to rein in their pension obligations and workers and retirees attempt to secure all the benefits they have been promised, many of the disputes have made their way through our courts. The decisive legal mechanism in many of these cases has been the pension protection clause. See, *e.g.*, *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 89.

¶ 17        The pension protection clause of the Illinois Constitution states that "[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5. The pension protection clause is intended to eliminate the uncertainty that surrounded public pension benefits (*People ex rel. Sklodowski v. State*, 182 Ill. 2d 220, 228 (1998)) and to provide public employees with a basic protection against the complete abolition of their rights or the reduction of their benefits after they have already embarked upon employment (*Miller v. Retirement Board of Policemen's Annuity & Benefit Fund*, 329 Ill. App. 3d 589, 597 (2001)).

¶ 18                   A. Claims Based on the 1997, 2002, and 2003 Settlements and Amendments

¶ 19        The retirees argue that they are entitled to "lifetime healthcare coverage" "for each annuitant class, as it best was during their participation." For that to be the case, we would have to find that the Illinois Constitution's pension protection clause (Ill. Const. 1970, art. XIII, § 5) protected the benefit levels in the 1997, 2002, and 2003 amendments for life for any member of any subclass that participated in the plan while the particular amendment was in effect. The retirees' argument for permanent coverage on these terms has a significant emphasis on the Illinois Constitution's pension protection clause (Ill. Const. 1970, art. XIII, § 5) and the Illinois Supreme Court's decision in *Kanerva v. Weems*, 2014 IL 115811, so we begin there. However, we find that neither the Illinois Constitution nor the *Kanerva* decision extend the settlements' benefit levels to retirees beyond the temporal scope of those agreements.

¶ 20        The Illinois Supreme Court has interpreted the pension protection clause to protect not only the retirement annuity itself from diminution, but instead has held that all of the benefits flowing from one's participation in a public pension system are constitutionally protected. *Kanerva v. Weems*, 2014 IL 115811, ¶ 40. This constitutional protection included, specifically, health insurance subsidies. *Id.* ¶¶ 41, 57.

¶ 21    The retirees here maintain that their situation is the same as the retirees in *Kanerva*. They are part of a qualifying public pension system. Their healthcare subsidies have come from their participation in that system. Their public employer obligated itself to contribute to the cost of their healthcare. And, therefore, the City's plan to cease making healthcare contributions in accordance with the 1997, 2002, and 2003 amendments is unconstitutional.

¶ 22    However, the plaintiffs here are not in the same situation as the retirees in *Kanerva*. In that case, the healthcare subsidies were an open-ended obligation of the State, bestowed on the employees without condition. The same is not true here. In this case, the benefits that the retirees are trying to protect were conditional benefits that have since expired.

¶ 23    In 1987, the City sought to stop paying for retirees' healthcare coverage and initiated legal action in order to get a declaration of the parties' rights and obligations. The result was that a settlement was reached in 1989 and extended in 1997 and 2003 to offer subsidies and coverage, but each settlement contained an expiration date. The last amendment obligated the City only until June 30, 2013, and expressly provided that the City's obligations under that settlement terminated at that point. That was what the parties agreed upon and the General Assembly adopted.

¶ 24    As we explained when we affirmed the trial court's decision to deny the injunctive relief sought by the retirees, the settlements and attendant amendments did not create lifetime benefits because the benefits came with an expiration date. *Underwood v. City of Chicago*, 2016 IL App (1st) 153613, ¶¶ 23, 27. The expiration date was embedded in the benefit itself, and the benefit does not endure beyond the expiration date by application of the pension protection clause. Employees that began to participate in the retirement system in 1989 forward, like those already enrolled, were vested with the rights provided in the amendment in effect when they became employed and subsequent amendments enacted during their employment. However, they never had any contractual, statutory, or constitutional commitment that benefits at those levels would become permanent or extend beyond the contract's own term. Therefore, no member of any subclass can state a cause of action under count I insofar as the claim is based on the 1989, 1997, or 2003 settlements.

¶ 25    The pension protection clause enables employees to "lock in" pension rights that exist when they become employed or those that spring up thereafter during their employment. *Bosco v. Chicago Transit Authority*, 164 F. Supp. 2d 1040, 1056 (N.D. Ill. 2001). All that the employees here could lock in during the amendment periods was the City's obligation to provide healthcare benefits as expressly provided for and conditioned by the statute. The scope of the pension protection clause's application is "governed by the actual terms of the contract or pension." *Kerner v. State Employees' Retirement System*, 72 Ill. 2d 507, 514 (1978) (citing Ill. Ann. Stat., Ill. Const. 1970, art. XIII, § 5, Constitutional Commentary, at 302 (Smith-Hurd 1971)). The time limitation here was a condition of the employment relationship to which those employees consented. See *id.* There was never any contractual or statutory commitment by the City to provide the benefit levels in the amendments beyond the life of the amendments themselves. And without a contractual or statutory commitment to create a benefit, there is nothing that the pension protection clause can protect.

¶ 26    While the pension protection clause guarantees the vested rights of a public employee as provided in the contract that defines a participant's retirement system membership, it does not change the terms of that contract or the essential nature of the rights it confers. *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 59. The retirees' argument is that they are

entitled to benefits on the best terms that were ever provided to them, without regard to the limitations that encumbered those benefits. Such an interpretation would be an unwarranted extension of the pension protection clause that would enable the clause to create and define benefits rather than protect existing ones. A right cannot be protected if it does not exist. Here, the retirees have no enduring right to the benefit levels in the 1989, 1997, and 2003 amendments that the pension protection clause could possibly protect.

¶ 27 There is nothing in the Illinois Constitution or in any statute or precedent that prohibits the legislature from attaching conditions to the receipt of a statutory benefit, such as the limited time period here. To the contrary, where the legislature grants a right, it is free to define the parameters and application of that right. *Kaufman, Litwin & Feinstein v. Edgar*, 301 Ill. App. 3d 826, 831 (1998). There is nothing to prohibit the legislature from granting a privilege for a limited period of time or from incorporating an expiration date into an amendment. *In re Petition for Detachment of Land From Morrison Community Hospital District*, 318 Ill. App. 3d 922, 930 (2000). This is especially true where the statute merely codified the parties' own agreement. The pension protection clause does not affect the contours of the rights themselves—that is for the General Assembly to delineate when it grants benefits in the first instance.

¶ 28 After *Kanerva* was decided, our supreme court also explained that the pension protection clause does not present "an obstacle to a contractual provision that permits subsequent modification of public retirement benefits." *Matthews*, 2016 IL 117638, ¶ 66. Thus, importantly, "where a public employee becomes a member of a retirement system under a statute that includes a provision which may operate to deny him benefits in the future, that provision does not become an unconstitutional impairment of his retirement benefits because he agreed to it as a condition of his membership in the system." *Id.* ¶ 61. That means that where a benefit is conditional when conferred, the pension protection clause does not operate to remove the condition. And parties are free to contract for benefits, including temporary ones. See *id.* ¶ 66.

¶ 29 All of the foregoing analysis is a long way of saying that no retiree can state a claim for healthcare coverage as it was provided under the time-limited amendments under count I of the third amended complaint. When the amendments expired, the benefits granted therein expired. The pension protection clause does not give the retirees lifetime coverage in the manner that the coverage existed under the amendments, and the expiration of those benefits is not a diminution or impairment of any protected benefit flowing from participation in a public pension system.

¶ 30 B. Do the Retirees Have a Claim for Any Enduring Benefit,
and How Is the Benefit Defined?

¶ 31 Our holding that the 1989, 1997, and 2003 amendments do not create lifetime coverage under the pension protection clause is not the end of the analysis. Before those amendments were enacted, the parties agreed upon and the General Assembly adopted healthcare benefit plans in 1983 and 1985 that contained no such limitations. The benefits conferred under those amendments are unconditional healthcare benefits commensurate with the benefits provided by the statute covering the retirees in *Kanerva*—and they cannot be diminished.

¶ 32 Although the issue is essentially moot for the Korshak and Window subclasses, the trial court held that the members of subclass three could state a claim under count I for benefits

based on the 1983 and 1985 amendments under the pension protection clause. The trial court, however, held that the members of subclass four could not state a claim under count I for benefits based on the 1983 and 1985 amendments because they began participating in the retirement system during the operative period of the 1989 settlement and, thus, were subject to its expiration and left with nothing.

¶ 33    The idea contemplated by the parties upon settling the 1987 Korshak litigation was that the parties would continue to negotiate during the settlement period and, if they could not resolve their issues by the end of it, the parties would be restored to their pre-settlement positions and litigation could (and assuredly would) resume. The result is that when the settlement expired, the parties' rights and obligations returned to the status existing when the 1987 litigation began. Under the 1983 and 1985 amendments, employees were given an open-ended, unconditioned fixed-rate subsidy for their healthcare coverage, and those benefits, like the ones offered in *Kanerva*, are protected. When the 1987 litigation was settled (put on hold), no one ever anticipated, and there is no legal basis to conclude, that once the settlement expired, the City's obligations would be terminated as a matter of law.

¶ 34    In the 1989 settlement, the parties agreed to "negotiate in good faith toward achieving a permanent resolution of this dispute" until the end of the settlement period and that "[f]ailing agreement, the parties shall be restored to the same legal status which existed as of October 19, 1987." When no permanent solution was reached by 1997, and the City tried to terminate the plan unilaterally again, the case ended up before this court, which held that "under the express terms of the settlement agreement, the [retirees] are entitled to reargue the claims originally asserted" in the 1987 case. *Ryan*, No. 1-98-3465, slip order at 7.

¶ 35    It was not until the 2003 settlement was executed that the parties agreed that the City would have the unilateral authority to end the program entirely, meaning that all persons that participated in the retirement system before that agreement was executed still maintained a vested right to the unconditional 1983 and 1985 amendments. Therefore, the retirees in subclass four that began to participate in the retirement system before the 2003 settlement was executed have a claim under count I based on the 1983 and 1985 amendments under the pension protection clause.

¶ 36    For the first time in the 2003 agreement, the parties agreed that, at the expiration of that agreement, "the City may offer additional healthcare plans at its own discretion and may modify, amend, or terminate any of such additional healthcare plans at its sole discretion." So for the first time in 2003, the City obtained the requisite legal authority and put any new entrant to the retirement system on notice that, if and when the time-limited 2003 plan was terminated, there would be no further coverage at all. And because of the pension protection clause, such a promulgation can only be applied prospectively to employees whose participation in the system begins thereafter.

¶ 37    Even those retirees who began participating in the system after 1989 still had vested rights in the 1983 or 1985 amendments. The post-1989 participants did not start under a benefit plan that said *all* healthcare benefits would expire at the end of the settlement period. They started on a time-limited plan, which stated that they would be reinstated to the pre-settlement status quo at the time the settlement expired. The settlements never expressed that future annuitants were to be treated differently or precluded from also reverting to the pre-settlement status quo. When the 2003 settlement expired in 2013, the rights of employees whose participation started before the 2003 settlement was executed merely reverted to the status existing when the

*Korshak* case was filed in 1987. So, being back at that point, the City is obligated to those retirees under the 1983 and 1985 amendments.

¶ 38 When the case was before us for a review of the denial of a motion for a preliminary injunction, our main inquiry was into whether the 2016 benefits were a sufficient substitute for the 1983 and 1985 levels. *Underwood*, 2016 IL App (1st) 153613, ¶ 26. Our review at that point was also whether the trial court abused its discretion in denying the preliminary injunctive relief. *Id.* The fact of the matter is that the 1983 and 1985 amendments offered healthcare benefits with no strings attached. The settlements acted as a substitute for those benefits on an interim basis and did not diminish them, but in fact, enhanced them. See *id.* ¶¶ 25-26. However, when the settlements ceased to operate as a matter of law, the retirees still had the 1983 and 1985 benefits to fall back on—benefits that cannot legally be diminished.[2]

¶ 39 The next question then is what is the "benefit" that is actually protected? The United States Court of Appeals for the Seventh Circuit alluded to this question in its opinion remanding the case to state court:

> "There is, moreover, a potentially important question that the parties have not addressed: What 'benefits' does the Pensions Clause protect? Plaintiffs assume that it covers in-kind benefits such as health care, no matter the cost to the employer. Yet pensions promise a particular amount of money (for defined-benefit plans) or the balance in a particular fund (for defined-contribution plans), not a particular quantum of buying power. If the cost of automobiles, food, or health care rises, the Pensions Clause does not require the state to supplement pensions beyond the promised level. A parallel approach for health care would imply that the Pensions Clause locks in the amount of the promised subsidy but does not guarantee a particular level of medical care. *Kanerva* implies as much by saying that the state's *contributions* to health-insurance premiums are the protected benefit." (Emphasis in original.) *Underwood v. City of Chicago*, 779 F.3d 461, 463 (7th Cir. 2015).

We hold that the pension protection clause protects the latter—the fixed-rate subsidy itself. When the benefit at issue is a defined subsidy, the clause protects the pensioner's right to that contribution at that specific level. The recipients get what the statute or contract that grants the right expressly says they get. *Matthews*, 2016 IL 117638, ¶¶ 59, 66.

¶ 40 Under the 1983 amendment, the City is obligated to pay toward its retirees' healthcare $55 per month for non-Medicare-eligible retirees and $21 per month for Medicare-eligible retirees. Ill. Rev. Stat. 1983, ch. 108½, ¶ 5-167.5(d). Under the 1985 amendment, the City is obligated to pay $25 per month for its municipal employees and laborers and retirement board employees. Ill. Rev. Stat. 1985, ch. 108½, ¶ 11-160.1. The retirees contend that the pension protection clause should be considered to protect their abstract right to "healthcare coverage." But that is not what the Illinois Constitution provides. The pension protection clause protects a specific tangible benefit that cannot be diminished or impaired. See *Kanerva*, 2014 IL 115811, ¶¶ 38, 57. It is the subsidy itself that is protected. Under count I, the pension protection clause

---

[2]In *dicta* in our opinion affirming the denial of preliminary injunctive relief, we imprecisely stated that subclass four had "no ascertainable claims to lifetime healthcare benefits." *Underwood*, 2016 IL App (1st) 153613, ¶ 23. However, as alluded to in the preceding sentence of that opinion and encapsulated the opinion as a whole, our review concerned the interim settlement agreements, which we reaffirm today did not create any right to lifetime coverage.

protects the benefits in the 1983 and 1985 amendments for any retiree who began participating in the retirement system before the 2003 settlement was executed. The 1983 and 1985 amendments represent the highest level of benefits to which the retirees ever had an enduring right. For the reasons set forth in section A above, the pension protection clause entitles the retirees to nothing more.

¶ 41                         C. Statute of Limitations and Jurisdiction

¶ 42     In the trial court, the City maintained that all of the retirees' claims under the 1983 and 1985 amendments are barred by the statute of limitations. At least one of the retirement funds joined in this argument. This argument applies to our previously-expressed holding as it challenges whether any of the retirees, but particularly subclasses three and four, can state a claim based on the 1983 and 1985 amendments after the passage of so much time. The City and the Funds contend that the retirees' claims under the 1983 and 1985 amendments are contract-based, and even with the application of the pension protection clause, are subject to and barred by the 10-year statute of limitations for contract claims (735 ILCS 5/13-206 (West 2012)). The trial court ruled that the statute of limitations issue was moot as to the Korshak and Window subclasses because the parties had agreed upon some form of coverage that the City would provide for those members. The trial court held that as for subclass three, there was a question of fact about when the members discovered their injury under the discovery rule, so it denied the City's motion to dismiss in that regard. Then the court held that as for subclass four, they had no claim for relief in any event, so it was unnecessary to address the applicability of the statute of limitations for those members. We hold that none of the claims made under count I of the third amended complaint are time-barred.

¶ 43     The parties agreed in the 1989 settlement that "failing agreement" on a "permanent resolution of this dispute" they would be restored to their same legal status as it existed on October 19, 1987. The parties never reached a permanent solution. Then, when the City tried to unilaterally end the program again, we held that the retirees are "entitled to reargue the claims originally asserted" in the 1987 case. *Ryan*, No. 1-98-3465, slip order at 7. The 2003 settlement agreement again put off a judicial resolution of the suit, tolling the limitations period by agreement and once again expressly reserving the retirees' rights to pursue their claims for permanent coverage. The parties continued to settle for periods up until 2013 (and really until 2017) when, still having not arrived at a permanent solution, the City terminated its healthcare plan. The limitations period never expired for the retirees' claims.

¶ 44     The trial court applied the limits attached to the post-1987 settlements against the retirees, but did not give the retirees the benefit of the favorable terms of those same agreements—such as that the retirees always reserved their rights and that the parties would return to their pre-litigation positions when the settlements expired. It is also important to note that the settlements were originally between the Funds and the City, but they were imposed on the retirees because the agreements were always understood to simply delay a judicial resolution on the merits unless the parties could agree on an enduring solution.

¶ 45     A cause of action accrues, and the limitations period begins to run, when the party seeking relief knows or reasonably should know of its injury and that it was wrongfully caused. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 285 (2003). Because there was never a permanent solution and because the City did not end its healthcare coverage until January 1, 2017, the retirees' claims are not time-barred. Every time the City attempted to terminate the healthcare

- 10 -

plan, the retirees promptly instituted legal action and did so successfully until the City relented and entered into a new settlement. In addition, and while the rights invoked by the retirees were initially granted by contractual settlements, under count I of their third amended complaint, the retirees' claim for relief is a facial challenge to the constitutionality of the City's action based on the pension protection clause. The benefits are constitutionally protected from diminishment. Any inaction on the part of the retirees was a result of the City's inducement through settlements and their justifiable reliance that when the settlements expired, they would be entitled to revive their claims for coverage.

¶ 46      The Funds argue that we lack jurisdiction to consider the applicability of the 1983 and 1985 amendments to the Korshak, Window, and subclass three subclasses. This argument is based on the fact that the trial court held that those subclasses *could* state a claim based on the 1983 and 1985 amendments and, therefore, denied that portion of the motions to dismiss. However, the claims under count I of the complaint that relate to subclass four were dismissed in their entirety, and we have jurisdiction to review the dismissal under Rule 304(a). The Korshak and Window subclass members' claims are essentially moot as the parties have settled. So, subclass three remains, but our application of the law to the dispute between the City and subclass four necessarily touches on the rights of subclass three.

¶ 47                II. Contract and Estoppel Claims (Counts II and III)

¶ 48      Aside from the constitutional claims based on the pension protection clause, the retirees argue that they are entitled to lifetime coverage based on a contract or estoppel theory. Count II of their third amended complaint is for common law breach of contract, and count III is for common law estoppel. As we explained above, any person who entered the retirement system before the 2003 settlement went into effect does have lifetime coverage under the pension protection clause. Therefore, the only important inquiry remaining is whether the retirees are entitled to the benefit *levels* they claim they are entitled to as a result of any of the remaining theories set forth in the operative complaint.

¶ 49      The trial court dismissed the retirees' contract claim on the basis that they failed to attach any contract to their complaint. The trial court also indicated that the City of Chicago Annuitant Medical Benefits Plan Handbook was insufficient to support a claim for breach of contract because the handbook contains no promise or offer for lifetime healthcare coverage. Moreover, and as we noted in our opinion affirming the denial of the retirees' motion for a preliminary injunction (*Underwood*, 2016 IL App (1st) 153613, ¶ 26), the handbook expressly stated that coverage would terminate the date the Plan is terminated. There are other references to coverage being terminated in the annuitant handbook, and the retirees cannot point to anything in the handbook or in any other document that conveys an offer or promise that would obligate the City to provide lifetime coverage much less to provide coverage at any particular benefit level.

¶ 50      On appeal, the retirees focus their argument concerning their contract claim on the statute of frauds. Seemingly backing away from previous positions that there was an oral agreement for this lifetime contract, the retirees argue that the handbook and some other written communications are sufficient. But again, none of these communications contractually obligate the City to provide lifetime benefits. Indeed, since 1987, the City has had an eye toward ending the plan and has been very careful about expressing the limitations on the coverage it has provided. There is no documentary evidence to support the retirees' claim for

healthcare coverage for life on a contractual basis and its reliance on oral assurances is misplaced because lifetime contracts must be in writing (*McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 490-91 (1997)).

¶ 51 As for the retirees' estoppel claim, the allegations in the operative complaint itself are wholly insufficient. But the retirees' argument is that the City is estopped from changing or terminating coverage because the City issued benefit handbooks and held pre-retirement seminars. The retirees contend that the City is estopped from changing a retiree's coverage to a level below the highest level during a retiree's participation in the retirement system. In order to apply equitable estoppel against a municipality, a plaintiff must plead specific facts that show (1) an affirmative act by either the municipality itself or an official with express authority to bind the municipality and (2) reasonable reliance upon that act by the plaintiff that induces the plaintiff to detrimentally change its position. *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 48. The retirees have failed to plead or even support an argument with facts to support such a claim.

¶ 52 Moreover, since we have already held that the retirees are entitled to coverage under the amendments that remained intact, the only issue to address is the level of benefits that the retirees claim they are entitled to because of estoppel. But the retirees point to nothing at all to show they were promised a particular benefit level, especially for life. And any reliance on the 1989, 1997, and 2003 settlements would not be reasonable because those agreements expired by their own terms and could not support a claim for lifetime coverage at those levels. The retirees have also pivoted to an apparent authority theory, suggesting that because presenters at seminars told them they would have lifetime coverage, they have a claim for estoppel. But the retirees fail to allege how the presenters might have been authorized to bind the City to a commitment to lifetime coverage (especially at any particular benefit level), and apparent authority is not enough to bind a municipality; actual authority is required (*Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 40).

¶ 53                     III. Remaining Constitutional Claims (Counts V, VI, VII)

¶ 54 The retirees interposed a claim in their third amended complaint that the City's plan impermissibly impairs a contract and that they have also lodged equal protection and special legislation challenges.

¶ 55 The contracts clause provides that the government cannot pass laws that impair the obligation of contracts. Ill. Const. 1970, art. I, § 16. To determine whether a law impermissibly impairs a contract, we examine (1) whether there is a contractual relationship, (2) whether the law at issue impairs that relationship, (3) whether the impairment is substantial, and (4) whether the law serves an important public purpose. *Nissan North America, Inc. v. Motor Vehicle Review Board*, 2014 IL App (1st) 123795, ¶ 37. The retirees do not develop any argument about the dismissal of this claim in their appeal, so the claim is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (points not argued on appeal are forfeited). The contracts clause does not fit the case. For one example, the contract between the parties—the settlements at issue—expired by their own terms, not any government action. Anyhow, as pled, the claim fails because the allegations, if proved, would be insufficient to support a claim for any violation of the contracts clause. The retirees cannot state a claim on count V of the third amended complaint.

¶ 56    As for the retirees' equal protection and special legislation challenges, those types of challenges are judged by the same standard. *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 30-31 (2007). Both focus on whether a law treats similarly situated individuals differently. *Id.* The constitutional guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner. *American Federation of State, County, & Municipal Employees (AFSCME), Council 31 v. State*, 2015 IL App (1st) 133454, ¶ 30. Similarly, the Illinois Constitution provides that the General Assembly cannot pass special laws when a general law is or can be made applicable. *Id.* ¶ 31; Ill. Const. 1970, art. IV, § 13. This means that the General Assembly is prohibited from passing laws that confer a special benefit on a select group to the exclusion of others that are similarly situated. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 391 (1997).

¶ 57    The retirees argue that the City's plan violates the constitution because it discriminates among retirees based on when they retire. That claim, however, has nothing to do with the benefit levels themselves and, because of our holding on the pension protection clause issue, the level of benefits is the retirees' only outstanding grievance. Our holding on other issues results in none of the retirees being treated differently based on the date of retirement—they are all entitled to the same fixed-rate subsidy based on when they *entered* the retirement system. Therefore, the retirees cannot state a claim on count VI or VII of the third amended complaint. As we have noted, the City has agreed separately to fund some portion of the Korshak and Window subclass members' healthcare coverage. This opinion merely speaks to what the City is constitutionally obligated to provide. It, of course, may provide other benefits by agreement, as it did for a number of years under the 1989, 1997, and 2003 time-limited settlements.

¶ 58                                    IV. Injunctive Relief

¶ 59    The retirees include arguments about injunctive relief in their brief on appeal. They were attempting to preserve the status quo at the end of 2016, so that the City's plan to terminate coverage entirely could not go into effect. We addressed the retirees' requests for injunctive relief on motion[3] and, because the end of 2016 has already arrived, the retirees' request for injunctive relief is moot. *Moseley v. Goldstone*, 89 Ill. App. 3d 360, 365-66 (1980).

¶ 60                                     CONCLUSION

¶ 61    To summarize our holding, the settlements that held the 1987 *Korshak* litigation in abeyance from 1989 until 2013 have no enduring effect. The pension protection clause does not protect any term of those settlements because the settlements expired by their own terms as the parties agreed upon. However, the pension protection clause locked in the 1983 and 1985 fixed-rate subsidies for any employee who began participating in the system by the time the 2003 settlement was executed. Up until that point, all annuitants retained the rights that an annuitant had before the 1987 litigation began. Among those rights was the right to a fixed-rate subsidy that, under the Illinois Constitution, cannot be diminished or impaired for those employees already in the system.

¶ 62    Therefore, we agree with the trial court that the members of subclass three can state a claim on count I based on the 1983 and 1985 amendments, but we hold that the members of subclass

_____

[3]On December 7, 2016, we denied the retirees' motion for an injunction.

- 13 -

four that began participating in the retirement system before the 2003 settlement became operative also have a claim under count I.

¶ 63 None of the retirees have a right to lifetime coverage based on contract, estoppel, or any constitutional theory other than the pension protection clause. Similarly, none of those other theories entitle the retirees to a benefit level greater than that provided by the 1983 and 1985 amendments.

¶ 64 On remand, the court will have to find a workable solution to address how the subsidy will be funded as the court already indicated it would do for subclass three under the 1983 and 1985 amendments. Now, the court will need to include any participant in the system before the 2003 settlement was executed into that matrix in accordance with this opinion.

¶ 65 The result here will predictably leave both sides unhappy. The retirees have intimated that the 1983 and 1985 fixed-rate subsidies are insufficient because the amount of the benefit covers little of their ever-rising healthcare premiums. On the other hand, the City has been boastful of its heretofore success in eliminating the retiree healthcare plan altogether, and its interest in the badly-needed financial savings from eliminating the program is legitimate. However, after 30 years of litigation and millions of dollars spent, the result compelled by the application of our constitution, statutes, and precedent is that the retirees are entitled to lifetime healthcare coverage, albeit at modest levels—a result that should, but unlikely will, put an end to hostilities.

¶ 66 Accordingly, we affirm all but the trial court's ruling that the members of subclass four have no claim whatsoever under count I. Instead, we hold that any retiree that began participating in the system before the 2003 settlement was executed has a claim for relief based on the 1983 and 1985 amendments by operation of the pension protection clause.

¶ 67 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.