# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Rommel v. Illinois State Toll Highway Authority*, 2013 IL App (2d) 120273

| | |
|---|---|
| Appellate Court Caption | BARBARA ROMMEL, Individually and as Special Administrator of the Estate of Timothy Rommel, Deceased, Plaintiff-Appellant, v. THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Defendant-Appellee (Caritina Moncada-Jaime, Defendant).–ANTONIO LEWIS, Individually and as Special Administrator of the Estate of Shayula Lewis, Deceased, and on Behalf of, for the Benefit of, and as Father and Next Friend of Kierra Lewis, a Minor, Plaintiff-Appellant, v. THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Defendant-Appellee.–JAMES NEUKIRCH, as Special Administrator of the Estate of Mark E. Neukirch, Deceased, STEPHEN KUGELMAN, as Special Administrator of the Estate of Mathew Kugelman, Deceased, and JEANINE DOMBROW, as Independent Executor of the Estate of Matthew Dombrow, Deceased, Plaintiffs-Appellants, v. THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Defendant-Appellee.–RUTH SMITH and DONALD SMITH, Individually and as Parents and Next Friends of Hannah Smith, a Minor, Issac Smith, a Minor, and Zofia Smith, a Minor, Plaintiffs-Appellants, v. THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Defendant-Appellee.–MARIA VILLALOBOS, as Special Administrator of the Estate of Leopoldo Villalobos, Jr., Deceased, and MANAR M. DAHLEH, as Special Administrator of the Estate of Mohammed M. Dahleh, Deceased, Plaintiffs-Appellants, v. THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Defendant-Appellee. |
| District & No. | Second District<br>Docket Nos. 2-12-0273, 2-12-0274, 2-12-0275, 2-12-0276, 2-12-0277 cons. |
| Filed | September 9, 2013 |

**Held**

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

In five consolidated cases arising from two-car head-on collisions on a tollway, the trial court properly dismissed complaints against the tollway authority alleging negligent maintenance and voluntary undertaking in connection with the median separating traffic, since there is no liability in Illinois, even when crossover collisions are facilitated by the way a median is maintained, and *Rommel I* held that no duty was owed by the tollway authority with regard to the median.

**Decision Under Review**

Appeal from the Circuit Court of Du Page County, Nos. 05-L-1301, 10-L-51, 06-L-163, 09-L-508, 07-L-527; the Hon. Dorothy French Mallen, Judge, presiding.

**Judgment**

Affirmed.

**Counsel on Appeal**

Robert A. Clifford, Robert P. Walsh, and Craig J. Squillace, all of Clifford Law Offices, P.C., and J. Timothy Eaton and Patricia S. Spratt, both of Shefsky & Froelich, Ltd., both of Chicago, for appellants.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Christopher M.R. Turner, Assistant Attorney General, of counsel), for appellee.

**Panel**

JUSTICE BIRKETT delivered the judgment of the court, with opinion.

Justices Hutchinson and Spence concurred in the judgment and opinion.

## OPINION

¶ 1    Five separate cases were consolidated due to the similarity of the issues. In each case, a two-car head-on collision leading to injury or death provided the factual backdrop of the complaint. Defendant, the Illinois State Toll Highway Authority (Authority), moved to dismiss each complaint on the basis that defendant owed no duty regarding the median separating traffic. The trial court certified two questions for permissive interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010). This court answered the

questions and held that defendant owed no duty regarding the median. *Rommel v. Illinois State Toll Highway Authority*, 405 Ill. App. 3d 1124 (2010) (*Rommel I*). We remanded the cause to the trial court for further proceedings. Upon remand, the trial court dismissed each action, holding that *Rommel I* compelled the dismissals. Plaintiffs appealed, arguing, effectively, that we should revisit our determinations on the certified questions in *Rommel I* and that, in any event, plaintiffs had stated a claim for negligent maintenance and voluntary undertaking regarding the median. We affirm the trial court's judgment.

¶ 2                                                    I. BACKGROUND

¶ 3        We first recapitulate the factual background and procedural history that placed these cases before us. This appeal arises from five separate actions, each alleging injuries arising from a two-car head-on collision on Interstate 90 (northwest tollway), a portion of the Illinois tollway system. In each action, a vehicle lost control and left the roadway, crossed a 50-foot median, and encountered oncoming traffic, striking a vehicle and injuring or killing plaintiffs or their decedents.

¶ 4        Plaintiffs in the five actions–Barbara Rommel, individually and as special administrator of the estate of Timothy Rommel, deceased; Antonio Lewis, individually and as special administrator of the estate of Shayula Lewis, deceased, and on behalf of, for the benefit of, and as father and next friend of Kierra Lewis, a minor; James Neukirch, as special administrator of the estate of Mark E. Neukirch, deceased; Stephen Kugelman, as special administrator of the estate of Mathew Kugelman, deceased; Jeanine Dombrow, as independent executor of the estate of Matthew Dombrow, deceased; Ruth and Donald Smith, individually and as parents and next friends of Hannah Smith, a minor, Issac Smith, a minor, and Zofia Smith, a minor; Maria Villalobos, as special administrator of the estate of Leopold Villalobos, Jr., deceased; and Manar M. Dahleh, as special administrator of the estate of Mohammed M. Dahleh, deceased–filed suit against defendant alleging, in each case, that defendant should have (1) added guardrails or other barriers to the medians; (2) maintained the slope or shape of the medians differently to render them safer to drive over; and (3) erected signs warning motorists of the danger of crossover accidents due to the slope or condition of the medians. The cases were consolidated.

¶ 5        After many iterations of amended complaints, the trial court granted plaintiffs' motion to allow them to plead "that there was something that was done maintenance-wise that caused this median to be not reasonably safe." Plaintiffs then moved to certify two questions for interlocutory appeal under Illinois Supreme Court Rule 308 (eff. Feb 26, 2010).

¶ 6        This court allowed plaintiffs leave to appeal and addressed two certified questions in *Rommel I*, 405 Ill. App. 3d 1124. The questions concerned the Authority's duty to prevent crossover vehicle collisions:

          " '[1.] Does [defendant] have a common law duty to its users to correct, repair and/or improve its tollway system to prevent against "crossover" vehicle collisions when it was on notice that crossover vehicle collisions had occurred under the facts alleged by the Plaintiffs?

          [2.] Does the Illinois Road and Bridges Tollway Highway Act [(Act) (605 ILCS 10/1

*et seq.* (West 2008))] impose upon [defendant] a statutory duty to its users to correct, maintain, repair or improve its tollway system as is alleged by the Plaintiffs to prevent against crossover vehicle collisions?' " *Id.* at 1125.

¶ 7    We answered both questions in the negative. *Id.* Concerning the first question, after reviewing the relevant factors regarding the question of duty (reasonable foreseeability of injury, likelihood of such injury, magnitude of guarding against the injury, and consequences of placing that burden on the defendant), we determined that, in *DiBenedetto v. Flora Township*, 153 Ill. 2d 66 (1992), the Illinois Supreme Court had already resolved the question:

> "In *DiBenedetto* ***, the supreme court considered a township's duty to a driver who died after his car veered out of his lane, crossed over the shoulder, and landed in a steeply pitched drainage ditch parallel to the road. [Citation.] The driver's estate argued that the township should be held liable for its failure to remedy the dangerous condition created by the ditch, but the supreme court affirmed the trial court's decision to dismiss the case on the ground that the township owed no duty to make the drainage ditch safe for motorists." *Rommel I*, 405 Ill. App. 3d at 1126.

¶ 8    We reasoned that, under *DiBenedetto*, the entity maintaining a road has a duty to maintain only the traveled way in a reasonably safe condition, regardless of the foreseeability of a driver veering from the road. *Id.* at 1127. We concluded that, like the drainage ditch in *DiBenedetto*, the grassy median at issue here need not be maintained as a safe way for driving. *Id.*

¶ 9    Plaintiffs argued that, notwithstanding *DiBenedetto*, defendant should not be held to the duty imposed on government overseers of public roads, but to the higher duty a business owner owes to its invitees, which requires the owner to maintain its property in a reasonably safe condition. *Id.* at 1127-28. However, because the *DiBenedetto* analysis was not premised on the defendant's status as a government entity, but on the notion that an entity that maintains roads owes a duty only to keep those roads reasonably traversable, *DiBenedetto* foreclosed plaintiffs' argument. *Id.* at 1128. Thus, we answered the first certified question in the negative.

¶ 10   As to the second certified question, we examined the language of the Act and noted that it did not explicitly impose a duty on defendant, it was not designed to protect human life or property, and it only authorized, rather than mandated, defendant to undertake certain acts and did not specify the manner. *Id.* We also rejected out-of-state authority cited by plaintiff, as we were bound to follow the precedent of the Illinois Supreme Court. *Id.* Accordingly, we answered the second certified question in the negative. The matter was remanded to the trial court for further proceedings.

¶ 11   On remand, defendant again moved to dismiss each of plaintiffs' complaints arguing that, under the law of the case per *Rommel I*, plaintiffs could not sufficiently plead the essential element of duty, and so they could not maintain a claim on which relief could be granted. Plaintiffs responded that *Rommel I* did not foreclose each of their claims that defendant created a dangerous condition on the median by failing to properly maintain it. Plaintiffs asserted that each of their maintenance claims was not included in the certified questions, as

they had deliberately excluded the term "maintain" from the first certified question to avoid review of that specific issue. In addition, plaintiffs argued that the trial court had previously permitted them to proceed on the maintenance claim and could revisit the issue because there was no final judgment.

¶ 12    The trial court applied *Rommel I* to each claim and concluded that defendant had no duty to maintain the median to prevent crossover collisions, even though it performed maintenance on the median that decreased a driver's ability to recover. Referencing the answers to the certified questions, the trial court stated, "I think the answer to the question is broad enough that it tells me, as the trial judge, that there is no duty on the part of [defendant] to correct or repair any maintenance that [it] did on the median strip which may have resulted in a defect which could be a proximate cause of the injuries sustained by the plaintiffs." The trial court, therefore, granted defendant's motions to dismiss plaintiffs' complaints. Plaintiffs timely appeal.

¶ 13                                II. ANALYSIS

¶ 14    Plaintiffs make a number of arguments that appear only to rehash their arguments in *Rommel I* and to ignore *Rommel I*'s conclusion that defendant did not owe a duty to correct, repair, and/or improve the median to prevent crossover collisions. Indeed, plaintiffs proceed through the four duty factors and argue that defendant did owe a duty to guard against crossover accidents. We need not consider the standard of review on the issue of duty, as plaintiffs argue, because we apply the law-of-the-case doctrine. As the application of the law-of-the-case doctrine is a question of law, our standard of review is *de novo*. *In re Christopher K.*, 217 Ill. 2d 348, 363-64 (2005).

¶ 15    The law-of-the-case doctrine limits relitigation of a previously decided issue in the same case (*Village of Ringwood v. Foster*, 2013 IL App (2d) 111221, ¶ 33 (citing *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006))), and encompasses not only the court's explicit decisions, but those issues decided by necessary implication (*Reich v. Gendreau*, 308 Ill. App. 3d 825, 829 (1999)). The doctrine applies to questions of law on remand to the trial court, as well as on subsequent appeals to the appellate court. *Radwill v. Manor Care of Westmont, IL, LLC*, 2013 IL App (2d) 120957, ¶ 8.

¶ 16    Plaintiffs suggest that the law-of-the-case doctrine does not apply to questions decided in a Rule 308 interlocutory appeal, citing *People v. Patterson*, 154 Ill. 2d 414, 469 (1992), because there must be a final judgment in order for the law-of-the-case doctrine to apply. Plaintiffs are misguided; by permitting a Rule 308 appeal and answering the certified questions, an appellate court renders a final judgment, as we did in *Rommel I*. See *Schrock v. Shoemaker*, 159 Ill. 2d 533, 537 (1994) (discussing the procedure for appeal to the Illinois Supreme Court after an appellate court's *final judgment* under Rule 308). Furthermore, the application of the law-of-the-case doctrine to a decision in an interlocutory appeal is hardly novel. See, *e.g.*, *McNamee v. Sandore*, 373 Ill. App. 3d 636, 649 (2007) (refusing to revisit a prior ruling pursuant to Rule 308 as law of the case).

¶ 17    That said, there are two exceptions to the law-of-the-case doctrine: (1) when, after a reviewing court's original decision, a higher reviewing court makes a contrary ruling on the

same issue; and (2) when a reviewing court finds that its prior decision was palpably erroneous. *Bjork v. Draper*, 404 Ill. App. 3d 493, 501 (2010). Neither exception is applicable here.

¶ 18        As to the first exception, plaintiffs argue that, after *Rommel I* was decided, the Illinois Supreme Court in *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, rejected the "formulaic approach to duty" advanced by defendant and, apparently, used by this court in determining the duty issue in *Rommel I*. However, as defendant points out, *Simpkins* is not a contrary ruling and does not address the same issue as *Rommel I*.

¶ 19        The "contrary ruling" exception applies where the higher court "decides the *precise* question contrary to the rule announced in the appellate court." (Emphasis added.) *In re Application of Kane County Collector*, 135 Ill. App. 3d 796, 800 (1985). *Simpkins* addressed whether a company owed a duty of care to its employee's relatives to protect them from second-hand asbestos exposure and thus focused on a defendant's duty to a third party. *Simpkins*, 2012 IL 110662, ¶¶ 22, 27-30. *Rommel I*, by contrast, involved a duty allegedly owed to first parties and did not address the issue of third-party harm. Thus, the precise question involved in *Simpkins* is not present here, and the "contrary ruling exception" does not apply.

¶ 20        Nonetheless, plaintiffs argue that *Simpkins* represents a change in the duty analysis requiring us to revisit the question of duty posed in both of the certified questions addressed in *Rommel I*. We disagree. *Simpkins* applied the same general duty principles that we outlined in *Rommel I* and that our supreme court considered in *DiBenedetto*. See *id.* ¶ 18 (duty analysis includes "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant"); *DiBenedetto*, 153 Ill. 2d at 72 (discussing foreseeability, likelihood of injury, and burdens and consequences in determining the defendant's duty); *Rommel I*, 405 Ill. App. 3d at 1126 (the court considers whether a duty exists by considering the " 'reasonable foreseeability of injury, the likelihood of such injury, the magnitude of guarding against the injury, and the consequences of placing that burden on the defendant' " (quoting *Washington v. City of Chicago*, 188 Ill. 2d 235, 239 (1999))). Thus, *Simpkins* does not represent a change in the duty analysis, and we conclude that the first exception to the law-of-the-case doctrine does not apply here. Furthermore, to the extent that plaintiffs argue that *DiBenedetto* is not sufficiently factually similar to *Rommel I* to have guided our duty analysis here, we disagree. As mentioned above, both *DiBenedetto* and *Rommel I* focus on the maintenance of an area adjacent to the roadway, where vehicular traffic is not expected, and it was appropriate in *Rommel I* to follow the precedent established by our supreme court.

¶ 21        As to plaintiffs' contention that *Rommel I* was palpably erroneous, we see nothing compelling in plaintiffs' arguments to merit reconsideration of our holding there. The palpably erroneous exception applies only where the court's prior decision was obviously or plainly wrong. *Radwill*, 2013 IL App (2d) 120957, ¶ 12. Even our own disagreement with *Rommel I*'s result would not warrant deeming it palpably erroneous. See *id.* ("[t]he fact that a court might reach a different conclusion if it had to consider the issue anew does not mean that the court's prior decision was palpably erroneous").

¶ 22    Plaintiffs aver that this court overlooked the fact that, in *DiBenedetto*, the "traveled way, shoulders, and drainage ditches" were to be maintained only for their intended uses, whereas here the normal and intended use of the median is to facilitate safe travel. We disagree with plaintiffs' characterization. While *DiBenedetto* does note the "normal and intended use" of the drainage ditch, the focus is not on its specific purpose, but rather on what the "normal and intended use" was *not*. That is, the court focused on the lack of expectation of vehicular traffic in the ditch. See *DiBenedetto*,153 Ill. 2d at 71 ("[p]eople are not expected to drive in [drainage ditches along streets and highways] and the public cannot be an insurer of those who do"). Regardless of their specific intended purposes, neither the drainage ditch nor the median is intended to be driven on. Because plaintiffs' attack on *Rommel I* in no way demonstrates that it was obviously or plainly wrong, the second exception to the law-of-the-case doctrine does not apply.

¶ 23    In applying the law-of-the-case doctrine here, we decline to address plaintiffs' arguments insofar as they attempt to relitigate *Rommel I*, including the factors evaluated in determining whether a duty exists, the relationship between defendant as a business owner and plaintiffs as invitees, a statutory duty imposed by the Act, and out-of-state authority supporting liability for toll authorities in similar situations.

¶ 24    Thus, we are left with plaintiffs' argument that the trial court, in dismissing plaintiffs' complaints, improperly applied *Rommel I* to their claim that defendant's negligent maintenance created dangerous conditions by changing the slope or the surface of the median so that an out-of-control car was less likely to regain control. We review the dismissal of plaintiffs' complaints *de novo* (*Lacey v. Village of Palatine*, 232 Ill. 2d 349, 359 (2009)), accepting all well-pleaded facts in the complaint as true and drawing all reasonable inferences in favor of plaintiffs (*Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003)). We may affirm the trial court on any basis, regardless of the trial court's reasoning, if the record supports a proper ground for dismissal. *Midway Park Saver v. Sarco Putty Co.*, 2012 IL App (1st) 110849, ¶ 22.

¶ 25    In their original response to defendant's motions to dismiss, plaintiffs argued that, although defendant was not obligated to "install" the grassy median, it voluntarily undertook to do so, thereby assuming a duty to ensure that the median was properly maintained. Plaintiffs now contend that this question was not addressed in *Rommel I*. While we did not explicitly decide in *Rommel I* whether defendant had a duty to "maintain" the median so as to prevent crossover collisions, it was decided by necessary implication. See *Reich*, 308 Ill. App. 3d at 829. As noted by the First District, " 'maintenance' " concerns " '[t]he performance of all things necessary to keep a highway in serviceable condition for vehicular traffic,' " while "improvement" "involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Anderson v. Alberto-Culver USA, Inc.*, 317 Ill. App. 3d 1104, 1112 (2000). Certainly, if defendant had no duty to spend labor or money on the median to prevent crossover collisions, it had no duty under the lesser obligation to make ordinary repairs to prevent crossover collisions.

¶ 26    Even if the issue of defendant's lack of duty to "maintain" were not subsumed by *Rommel I*, Illinois courts have concluded that, even where a median is maintained in such a

manner that facilitates crossover collisions, there is no liability. See, *e.g.*, *Knight v. City of Chicago*, 298 Ill. App. 3d 797, 800-01 (1998) (city had no duty to maintain medians such that they were safe for vehicles when they left the roadway), *aff'd sub nom. Washington v. City of Chicago*, 188 Ill. 2d 235 (1999). Rather, liability attaches only where the improvements are made that directly render the street defective, such that travel on the *street* becomes unreasonably dangerous. See *Ross v. City of Chicago*, 168 Ill. App. 3d 83, 89 (1988) (holding that city had no common-law duty to erect a median barrier to prevent crossover collisions). Here, plaintiffs argue that, by virtue of creating a highway divided by a grassy median, defendant has voluntarily undertaken to prevent crossover collisions. Even if we were to consider the creation of the median a voluntary undertaking, plaintiffs do not argue that the median directly rendered the highway defective, such that travel upon it was unreasonably dangerous. Rather, plaintiffs maintain that the median itself was not reasonably safe. This issue was decided adversely to plaintiffs in *Rommel I*. Accordingly, because plaintiffs' complaints failed to sufficiently allege the duty element of a negligence claim, we hold that the trial court did not err in dismissing plaintiffs' complaints.

¶ 27                                    III. CONCLUSION

¶ 28        For the foregoing reasons, the judgments of the circuit court of Du Page County are affirmed.


¶ 29        Affirmed.