2025 IL App (1st) 231132

FIFTH DIVISION
February 28, 2025

No. 1-23-1132

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| MICHAEL W. UNDERWOOD, JOSEPH M. VUICH, RAYMOND SCACCHITTI, ROBERT McNULTY, JOHN E. DORN, WILLIAM J. SELKE, JANIECE R. ARCHER, DENNIS MUSHOL, RICHARD AGUINAGA, JAMES SANDOW, CATHERINE A. SANDOW, MARIE JOHNSTON, *et al.* | ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | |
| THE CITY OF CHICAGO, a Municipal Corporation; THE TRUSTEES OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO; THE TRUSTEES OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO; THE TRUSTEES OF THE MUNICIPAL EMPLOYEES' ANNUITY BENEFIT FUND OF CHICAGO; and THE TRUSTEES OF THE LABORERS' AND RETIREMENT BOARD EMPLOYEES' ANNUITY AND BENEFIT FUND OF CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 13 CH 17450 |
| Defendants | ) ) | |
| (The Trustees of the Policemen's Annuity and Benefit Fund of Chicago, the Trustees of the Firemen's Annuity and Benefit Fund of Chicago, the Trustees of the Municipal Employees' Annuity and Benefit Fund of Chicago, and the Trustees of the Laborers' and Retirement Board Employees' Annuity and Benefit Fund of Chicago, Defendants- | ) ) ) ) ) ) ) ) ) | The Honorable Neil H. Cohen, Judge, presiding. |

No. 1-23-1132

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justices Mitchell and Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiffs,[1] all civic retirees, appeal the trial court's grant, on April 24, 2023, of summary judgment for the four defendant funds: (1) the Trustees of the Policeman's Annuity and Benefit Fund of Chicago, (2) the Trustees of the Fireman's Annuity and Benefit Fund of Chicago, (3) the Trustees of the Municipal Employees' Annuity and Benefit fund of Chicago, and (4) the Trustees of the Laborers' and Retirement Board Employees' Annuity and Benefit Fund of Chicago (collectively, the funds).

¶ 2        This court previously affirmed, on December 1, 2023, the trial court's grant of summary judgment for the City of Chicago (City), the only other defendant besides the funds and the sole appellee in that prior appeal. While the prior appeal concerned only the City, this appeal concerns only the funds.

¶ 3        At issue in this appeal is plaintiffs' belief that, although the funds have provided healthcare plan options for plaintiffs, the funds' options are insufficient. However, as Justice Mikva previously observed on behalf of a unanimous appellate court, "[i]t is absolutely law of the case that the plaintiffs have no right to receive—and that neither the City nor the Funds have any obligation to provide—any additional monetary contributions or to guarantee affordable healthcare." *Underwood v. City of Chicago*, 2020 IL App (1st) 182180, ¶ 53

---

[1]See the appendix to this opinion for a list of the 337 named plaintiffs listed in exhibit 23 to the sixth amended complaint. *Infra* ¶ 60.

2

(*Underwood III*). Former appellate court Justices Cunningham and Connors concurred. For the reasons discussed below, we affirm.

¶ 4                                    BACKGROUND

¶ 5                                    I. The Parties

¶ 6         Plaintiffs' sixth amended complaint is the most recent complaint filed in this action. It alleges that plaintiffs are 337 participants in one of the four pension funds named as defendants. In *Underwood III*, this court described plaintiffs as follows: "Plaintiffs in the present action are past or present City employees who alleged improper diminution of pension benefits under the Illinois Constitution, breach of contract, estoppel, impairment of contract, and denial of equal protection." *Underwood III*, 2020 IL App (1st) 182180, ¶ 14.

¶ 7         *Underwood III* observed that the City is an entity that had previously "provided its retirees with fixed-rate healthcare subsidies funded by city taxes." *Underwood III*, 2020 IL App (1st) 182180, ¶ 7. However, in 1987, "the City announced that it would stop providing the subsidies," and this was the start of the legal discourse that eventually led to the present suit. *Underwood III*, 2020 IL App (1st) 182180, ¶ 9.

¶ 8         Regarding the funds who are defendants and the sole appellees, this court has observed:

"The General Assembly created four pension funds for City employees in order to administer and carry out the provisions of the Illinois Pension Code: (1) the Policemen's Annuity and Benefit Fund (Police Fund), (2) the Firemen's Annuity and Benefit Fund (Fire Fund), (3) the Municipal Employees' Annuity and Benefit Fund (Municipal Fund), and (4) the Laborers' and Retirement Board Employees' Annuity and Benefit Fund (Laborers' Fund) (collectively, [f]unds)." *Underwood v. City of Chicago*, 2016 IL App (1st) 153613, ¶ 3 (*Underwood I*).

3

The taxpayers of the City financed the funds' obligations "through a tax levy." *Underwood I*, 2016 IL App (1st) 153613, ¶ 3.

¶ 9                                     II. The 1983 and 1985 Subsidies

¶ 10          In 1983, the City agreed to provide fixed-rate healthcare subsidies to retired Chicago police officers and firefighters. Subsequently, the Illinois Pension Code was amended to include these subsidies. *Underwood III*, 2020 IL App (1st) 182180, ¶ 7 (citing Pub. Act 82-1044, § 1 (eff. Jan. 12, 1983) (adding Ill. Rev. Stat. 1983, ch. 108½, ¶ 6-164.2)).

¶ 11          In 1985, the Pension Code was further amended to include subsidies to retired municipal employees, laborers, and retirement board employees. *Underwood III*, 2020 IL App (1st) 182180, ¶ 7; .Pub. Act 84-159, § 1 (eff. Aug. 16, 1985) (adding Ill. Rev. Stat. 1985, ch. 108½, ¶ 11-160.1)

¶ 12          The 1983 and 1985 "legislation contemplated that each of the funds established for these employees"—namely, the four funds named as defendants here—"would contract with an insurance carrier to provide a healthcare plan for its retirees." *Underwood III*, 2020 IL App (1st) 182180, ¶ 7. The funds would then "use the monthly subsidies provided by the City toward the premiums for such coverage." *Underwood III*, 2020 IL App (1st) 182180, ¶ 7. If the premiums cost more than the subsidies, "the excess was to be deducted from a retiree's monthly annuity," unless the retiree renounced the coverage. *Underwood III*, 2020 IL App (1st) 182180, ¶ 7.

¶ 13                                     III. The Korshak Litigation

¶ 14          When the City announced in 1987 that it was going to stop paying these subsidies on January 1, 1988, it also filed a lawsuit seeking a declaratory judgment that it did not have to

pay them, which became known as the "Korshak [l]itigation." *Underwood III*, 2020 IL App (1st) 182180, ¶ 9; City of Chicago v. Korshak, No. 87 CH 10134 (Cir. Ct. Cook County).

¶ 15    Before the merits of the Korshak litigation were decided, however, the City and the funds reached a settlement. This settlement was not a permanent solution but merely an interim measure, designed to give the parties more time to reach a more lasting solution. However, if they failed to reach such a solution at the end of 10 years, the settlement returned the parties to the same legal status that they had had on October 19, 1987, when the litigation began. *Underwood III*, 2020 IL App (1st) 182180, ¶ 10.

¶ 16    Effective August 23, 1989, the Pension Code was amended, to include the terms of this first interim settlement, including a 10-year limit. In 1997, before the time limit in the first interim agreement expired, the parties reached a second interim agreement, which was set to expire on June 30, 2003. On April 4, 2003, the parties reached a final settlement. *Underwood III*, 2020 IL App (1st) 182180, ¶¶ 10-12.

¶ 17                              IV. The Underwood Litigation

¶ 18    On July 23, 2013, plaintiffs filed a new action against the City and the four funds, which is the present Underwood litigation. *Underwood I*, 2016 IL App (1st) 153613, ¶ 12.

¶ 19    Regarding the Underwood litigation, this court has observed that plaintiffs can be divided into "four subclasses: (1) those who retired before December 31, 1987 ***, (2) those who retired between January 1, 1988, and August 23, 1989 ***, (3) those who retired on or after August 23, 1989 ***, and (4) those who were hired after August 23, 1989." *Underwood III*, 2020 IL App (1st) 182180, ¶ 14. The claims of the first and second subclasses are "essentially moot as the parties have settled." *Underwood v. City of Chicago*, 2017 IL App (1st) 162356, ¶ 46 (*Underwood II*).

¶ 20　　　　With respect to the third and fourth subclasses, the significance of the date of August 23, 1989, is that this was the date on which the Pension Code was effectively amended to include the terms of the first interim agreement. See *Underwood III*, 2020 IL App (1st) 182180, ¶ 10.

¶ 21　　　　This court has previously found that plaintiffs cannot "state a claim for benefits based on the 1987, 1997, or 2003 amendments to the Pension Code because the settlements giving rise to those amendments were stopgap measures providing only time-limited benefits." See *Underwood III*, 2020 IL App (1st) 182180, ¶¶ 15-16 (describing a prior trial court ruling that was affirmed in *Underwood II*); see also *Underwood III*, 2020 IL App (1st) 182180, ¶ 46 ("In *Underwood II*, this court agreed with the circuit court that plaintiffs could not state a claim for coverage under the time-limited benefits provided for in the 1989, 1997, and 2003 settlements."). This court has found that the 1983 and 1985 amendments to the Pension Code contained no time limits and that they "protected the right to a fixed-rate subsidy" but "not a particular quantum of buying power or level of healthcare services." *Underwood III*, 2020 IL App (1st) 182180, ¶¶ 15-16. The right to subsidies extended to those in the third subclass, as well as to those in the fourth subclass "who began participating before the 2003 settlement." *Underwood III*, 2020 IL App (1st) 182180, ¶ 16.

¶ 22　　　　　　　　　　　　　　V. *Underwood II* and *III*

¶ 23　　　　In *Underwood II*, the appellate court affirmed the trial court's dismissal with prejudice of plaintiffs' claims for breach of contract, estoppel, impairment of contract, violation of equal protection, and violation of the special legislation clause (Ill. Const. 1970, art. IV, § 13), leaving only issues under the pension clause (Ill. Const. 1970, art. XIII, § 5).

¶ 24   In *Underwood III*, we remanded the case to the trial court so that the trial court could consider, in the first instance, "[w]hether the pension protection clause binds the [f]unds to create or approve a healthcare plan and administer it for the retirees' benefit." *Underwood III*, 2020 IL App (1st) 182180, ¶ 50.

¶ 25   In *Underwood III*, we answered the two certified questions as follows:

"(1) plaintiffs' motion to compel each of the [f]unds to provide its annuitants with a healthcare plan was not barred by this court's [prior] decision *** and (2) the eligibility cutoff for City employees entitled to receive the fixed-rate subsidies is June 30, 2003, the last day before the terms of the court-approved 2003 settlement were incorporated by legislative amendment into the Pension Code." *Underwood III*, 2020 IL App (1st) 182180, ¶ 62.

¶ 26                              VI. *Underwood IV*

¶ 27   On remand from *Underwood III*, the trial court granted the plaintiffs' motion for summary judgment, in part, finding that the funds had a statutory obligation under the 1983 and 1985 amendments to contract with one or more carriers to provide group health insurance for all eligible annuitants.[2]

¶ 28   However, the trial court further found that this obligation did not require the funds to pay subsidies in excess of those provided for in the 1983 and 1985 amendments for any group health insurance or group health plan.

¶ 29   The City moved for an order dismissing the claims against it. In an order granting summary judgment in favor of the City, the trial court quoted the "law of the case" language

---

[2]This was the question that we indicated in *Underwood II* that the trial court should address "in the first instance." *Underwood III*, 2020 IL App (1st) 182180, ¶ 53.

from Justice Mikva's opinion that we quoted in our third paragraph above. *Supra* ¶ 3. The trial court then found:

> "it is now the law of the case that the only obligation the City has to the annuitants is to levy a tax sufficient to cover the subsidies provided for in the 1983 and 1985 amendments and then transfer the collected monies to the [f]unds. Plaintiffs do not allege, and do not contend, that the City has failed to levy the required tax or transfer the collected monies to the [f]unds."

The trial court, because the City's sole obligation to the annuitants was to levy the required tax and transfer the monies to the funds and because there was no allegation that the City was failing in this obligation, granted summary judgment for the City on September 9, 2021. The trial court also observed that it had previously denied plaintiffs' motion to file a seventh amended complaint. In *Underwood v. Chicago*, 2023 IL App (1st) 211317, ¶ 30 (*Underwood IV*), we affirmed (1) the trial court's denial of plaintiff's motion to file a proposed seventh amended complaint and (2) the trial court's grant of summary judgment in favor of the City.

¶ 30                                    VII. *Underwood V*

¶ 31        The present opinion is now *Underwood V* (2025 IL App (1st) 231132) and, as noted, it is an appeal from the trial court's grant of summary judgment in favor of the funds and from the trial court's denial of plaintiffs' motion for leave to file their ninth iteration of their complaint.

¶ 32        The current appeal is an appeal from the memorandum opinion issued by the trial court on April 24, 2023, in which the trial court observed that "the sole remaining issue in this case" was "whether the Funds have complied with their obligations under the 1983 and 1985 Amendments regarding group health care plans for the annuitants." The trial court found that

it is beyond dispute that the funds have provided healthcare options for eligible annuitants and that the funds have made, and are making, the subsidy payments required by the 1983 and 1985 amendments.

¶ 33    The trial court noted that plaintiffs argue that the funds breached their fiduciary duty to plaintiffs by failing to offer healthcare plans acceptable to plaintiffs. However, the trial court observed that the last filed complaint, which was the sixth amended complaint, failed to allege a claim for breach of fiduciary duty. The trial court noted that plaintiffs were seeking to amend their complaint to assert a claim for breach of fiduciary duty, but the trial court denied that motion, noting that "[t]his case has been pending for a decade and [p]laintiffs have had ample opportunity to assert such a claim." As a result, the trial court found that "[a]ny amendment at this juncture would be extremely untimely."

¶ 34    The trial court noted that plaintiffs argue that the funds were bound by positions taken by them in the Korshak litigation and that these prior positions now required the funds to contract with the City, as insurer, to provide healthcare for life. However, the trial court observed that it had been repeatedly held by the trial court and the appellate court that plaintiffs had "failed to establish any contract between themselves and the City or [between] the Funds and the City regarding the provision of healthcare or healthcare subsidies." The trial court cited *Underwood II*, which found, in relevant part, that "the retirees point to nothing at all to show they were promised a particular benefit level, especially for life." *Underwood II*, 2017 IL App (1st) 162356, ¶ 52. The trial court stated that, to the extent that plaintiffs were arguing that the funds were estopped from denying that they were obligated to contract with the City to provide healthcare coverage for life, plaintiff's estoppel claims had already been dismissed with prejudice and affirmed on appeal.

¶ 35        Lastly, the trial court noted that plaintiffs asked the trial court to reconsider prior rulings, such as its denial of class certification. However, the trial court found that "Plaintiff[s'] cross-motion for summary judgment is not the proper vehicle to seek reconsideration of the court's previous rulings."

¶ 36        In its "Conclusion" paragraph of the April 24, 2023, opinion, the trial court held that "[t]he Funds' Motions for Summary Judgment are granted" and that "Plaintiffs' Motion for Leave to File a 'Ninth' Amended Complaint is also denied."

¶ 37        On May 18, 2023, plaintiffs filed a motion titled a "Motion for a Final Appealable Judgment Order." Plaintiffs' motion stated that they "reserve their right to appeal the Court's ruling in the matter" but asked the court to issue an order "including its declaration that the Funds' respective 1983 and 1985 Pension Code Retiree Healthcare amendments require the Funds to continue to contract, provide, and subsidize retiree healthcare plans for their annuitants who were first hired by the City on or before June 30, 2003."

¶ 38        On May 25, 2023, the trial court entered a short, one-page "Agreed Final Appealable Judgment Order," which stated that "with this Order, the Court's April 24, 2023, Order" was a "Final Appealable Judgment Order." The May 25, 2023, further stated:

> "as stated in the Orders on the Record,
>
>     (i) Annuitants first hired by the City by June 30, 2003, are entitled, for life, to their respective statutory benefits under the 1983 and 1985 Pension Code amendments. Accordingly, the Funds are required to continue to offer a group healthcare option and subsidize annuitant health care coverage for the annuitants; and
>
>     (ii) the Funds' current practices fulfill their obligations under their respective 1983 and 1985 statutes for the respective annuitants."

On June 22, 2023, plaintiffs filed a notice of appeal, and this appeal followed.

¶ 39                                                   ANALYSIS

¶ 40         On this appeal, plaintiffs challenge both the trial court's denial of their motion to file the ninth iteration of their complaint and the trial court's grant of summary judgment in favor of the funds. For the following reasons, we affirm.

¶ 41                                   I. Motion to File Another Complaint

¶ 42         Plaintiffs' proposed amended complaint would be their seventh filed complaint (the original complaint, plus six amended ones), if permitted, and the ninth one that they have proposed. Plaintiffs argue that the trial court abused its discretion by not allowing them to file it.

¶ 43         Plaintiffs acknowledge that a trial court's decision to deny leave to file an amended complaint will not be disturbed on review absent a clear abuse of discretion. *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 50. An abuse of discretion occurs when no reasonable person could take the view that the trial court took. *Meier v. Ryan*, 2023 IL App (1st) 211674, ¶ 8.

¶ 44         The most important consideration with a motion to amend is whether amendment would further the interests of justice. *Insurance Benefit*, 2017 IL App (1st) 162808, ¶ 51. Factors to consider include the timeliness of the proposed amendment and whether plaintiffs had prior opportunities to amend. *Insurance Benefit*, 2017 IL App (1st) 162808, ¶ 51. In *Insurance Benefit*, for example, the appellate court stated that it could find no abuse in a denial of the motion where the "parties had already been litigating the matter for nearly five years" and where the facts underlying the causes of action had been known since the inception of the lawsuit. *Insurance Benefit*, 2017 IL App (1st) 162808, ¶ 53. In the case at bar, plaintiffs have

been litigating for well over 10 years, they have received permission six times before to file an amended complaint, and the basic facts underlying this suit have been known to them since their suit's inception over a decade ago. Under these facts, any reviewing court would have a difficult time finding abuse. Thus, we must conclude again, as we did in our last opinion in this case, that the trial court did not abuse its discretion by denying another motion by plaintiffs to amend. *Underwood IV*, 2023 IL App (1st) 211317, ¶ 33 ("Under these facts, any reviewing court would be hard pressed to find abuse.").

¶ 45                                    II. Summary Judgment

¶ 46            Plaintiffs appeal the trial court's grant of summary judgment in favor of the funds. Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmovant, fails to establish a genuine issue of material fact, thereby entitling the moving party to judgment as a matter of law. *Zurich American Insurance Co. v. Infrastructure Engineering, Inc.*, 2023 IL App (1st) 230147, ¶ 17; 735 ILCS 5/2-1005(c) (West 2022). When, as in this case, the opposing parties have filed cross-motions for summary judgment, they have, in effect, conceded the absence of a genuine issue of material fact and have invited the trial court to decide the questions that they briefed as a matter of law. *Illinois State Bar Ass'n Mutual Insurance Co. v. Frank M. Greenfield & Associates, P.C.*, 2012 IL App (1st 110337, ¶ 18. On appeal, a reviewing court considers *de novo* the trial court's decision to grant summary judgment. *Zurich*, 2023 IL App (1st) 230147, ¶ 17.

¶ 47            On this appeal, the prior dismissal of plaintiffs' contract[3] and constitutional pension-clause claims are not at issue. Plaintiffs argue that the trial court erred in dismissing their

_____

[3]While the primary thrust of plaintiffs' arguments does not appear to be breach of contract but rather a statutory or fiduciary obligation to contract, their briefs do make references to a contract with

(1) fiduciary, (2) statutory, and (3) estoppel claims. With respect to fiduciary and statutory claims, plaintiffs assert that the funds breached fiduciary and statutory obligations, allegedly owed to plaintiffs, to provide healthcare coverage and subsidies. With respect to estoppel, plaintiffs argue that the funds were obligated to provide healthcare coverage and subsidies by prior statements made in prior, and subsequently settled, litigation. Plaintiffs also challenge earlier trial court decisions regarding denial of class certification and attorney fees.

¶ 48    First, with respect to breach of fiduciary duty, there is no breach of fiduciary duty claim against the funds in plaintiffs' complaint. Thus, there is no claim to proceed on. Summary judgment motions are limited to the claims raised in the complaint, and a plaintiff cannot raise claims that were not pled in the complaint as a means of defeating or obtaining summary judgment. *800 South Wells Commercial LLC v. Cadden*, 2018 IL App (1st) 162882, ¶ 43; *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 373 Ill. App. 3d 895, 900 (2007) (the theories upon which recovery is sought are fixed in the complaint, and a party cannot seek summary judgment on a claim not in the complaint).

¶ 49    Second, with respect to estoppel, the trial court found: "To the extent that [p]laintiffs are arguing that the [f]unds are estoped from denying that they are obligated to contract with the City to provide healthcare coverage for life, [p]laintiffs' estoppel claims have been dismissed with prejudice and the dismissal upheld on appeal."[4] In support, the trial court cited the *Underwood II* opinion, which found that "[n]one of the retirees have a right to lifetime coverage based on contract, [or] estoppel" (*Underwood II*, 2017 IL App (1st) 162356, ¶ 63),

---

the City and a breach of that contract. In a prior appeal, plaintiffs had argued that the funds had a contract with the City as the insurer, which plaintiffs could sue to enforce and which allegedly gave them lifetime healthcare guarantees. *Underwood IV*, 2023 IL App (1st) 211317, ¶ 37. This court rejected this claim in the prior appeal. *Underwood IV*, 2023 IL App (1st) 211317, ¶¶ 37-40.

[4]Plaintiffs argue on appeal that "the [f]unds are bound by their *Korshak* litigation recognition of their obligations to contract for coverage" for the annuitants' "lifetime."

and the *Underwood III* opinion, which found that "plaintiffs have no right to receive *** additional monetary contributions or *** affordable healthcare" (*Underwood III*, 2020 IL App (1st) 182180, ¶ 53). The trial court is correct in finding that these findings are now law of the case and, as such, plaintiffs are barred from relitigating them. "The law of the case doctrine limits relitigation of a previously decided issue in the same case [citation] and encompasses not only the court's explicit decisions, but those issues decided by necessary implication [citation]." *Rommel v. Illinois State Toll Highway Authority*, 2013 IL App (2d) 120273, ¶ 15. "The doctrine applies to questions of law on remand to the trial court, as well as on subsequent appeals to the appellate court." *Rommel*, 2013 IL App (2d) 120273, ¶ 15 (citing *Radwill v. Manor Care of Westmont, IL, LLC*, 2013 IL App (2d) 120957, ¶ 8).

¶ 50 Third, with respect to breach of statutory duty, the trial court's memorandum opinion found: "Plaintiffs cannot dispute that the Funds have provided healthcare options for eligible annuitants. Nor can Plaintiffs dispute that the Funds have made, and are making, the subsidy payments required by the 1983 and 1985 amendments." Plaintiffs do not dispute on appeal that the funds have provided healthcare options and have been making subsidy payments, although they continue to argue before us, as they did in the court below, that the funds should do more.

¶ 51 As this court previously stated, "[t]he bottom line here is that plaintiffs continue to seek money and healthcare guarantees, when this court has already found that they have 'no right to receive' them from either the City or the four funds." *Underwood IV*, 2023 IL App (1st) 211317, ¶ 38 (quoting *Underwood III*, 2020 IL App (1st) 182180, ¶ 53). This court found: "It is absolutely law of the case that the plaintiffs have no right to receive—and that neither the City nor the Funds have any obligation to provide—any additional monetary contributions or to guarantee affordable healthcare." *Underwood III*, 2020 IL App (1st) 182180, ¶ 53. As we

previously observed, "[t]he words 'absolutely' and 'no right' are unusually strong, definitive, and unequivocal." *Underwood IV*, 2023 IL App (1st) 211317, ¶ 38 (citing *Underwood III*, 2020 IL App (1st) 182180, ¶ 53). Based on this strong and unequivocal finding by a fellow panel in this same case, we can find no error in the trial court's grant of summary judgment here. In light of our affirmance of summary judgment, there is no need to consider whether a class action should have been certified. Further, in an earlier appeal, namely, *Underwood IV*, we already found that the issue of class certification was moot for the same reason. *Underwood IV*, 2023 IL App (1st) 211317, ¶ 38.

¶ 52                                III. Attorney Fees

¶ 53        Plaintiffs also appeal the trial court's earlier denials of attorney fees. Years ago, on August 8, 2019, the trial court entered a written order stating that plaintiffs' petition for attorney fees against the "[f]unds based on Fiduciary Breach" was denied "for the reasons stated by the Court on the record." On February 2, 2021, the trial court stated in a written order:

> "D. Attorney's Fees
>
> Finally, [p]laintiffs again request an award of attorney's fees under the Illinois Civil Rights Act. This court previously found that under *Johnson v. Municipal Employees', Officers' & Officials' Anuuity & Benefits Fund*, 2018 IL App (1st) 170732, [p]laintiffs' counsel could not recover attorney's fees under the Civil Rights Act as a matter of law."

In its notice of appeal, plaintiffs listed both the prior August 8, 2019, and February 2, 2021, orders.

¶ 54        On appeal, plaintiffs argue (1) that this court's decision in *Johnson* was wrongly decided and fees are permitted pursuant to the Illinois Civil Rights Act of 2003 (Civil Rights Act) (740 ILCS 23/5(c) (West 2020)), (2) that there was a "common fund" from which their

15

fees could and should be paid, and (3) that the funds' "breach of fiduciary duty is an alternative basis for fees."

¶ 55 First, in *Johnson*, this court found that "the Civil Rights Act cannot serve as a means for awarding attorneys' fees" where the plaintiffs "were not aggrieved parties suing under the Illinois Constitution on the subject of discrimination based on race, color, national origin or gender." *Johnson*, 2018 IL App (1st) 170732, ¶ 23. Similar to the plaintiffs in the case at bar, the plaintiffs in *Johnson* were Chicago municipal employees suing their pension fund regarding pension benefits, and their attorney sought fees under the Civil Rights Act for representing them. *Johnson*, 2018 IL App (1st) 170732, ¶¶ 3-9. The *Johnson* case is squarely on point, and plaintiffs here do not argue otherwise. Instead, the attorney here, who was the same attorney who sought fees in *Johnson*,[5] states in his brief that he will pursue this line of argument "unless and until" the Illinois Supreme Court rules otherwise. We admire his tenacity but decline his invitation to overrule our colleague's, Justice Hyman's, well-reasoned analysis of plain language, statutory intent, and supporting caselaw. *Johnson*, 2018 IL App (1st) 170732, ¶ 22 (plain language), ¶¶ 20-21 (statutory intent), ¶¶ 17-18, 21 (caselaw).

¶ 56 Second, as defendants point out, there was no common, court-administered fund. Also, Justice Hyman found against this same argument in *Johnson* too, observing that Illinois follows the rule that each party bears its own attorney fees and that retirement annuities are exempt from attachment for the payment of any debt, including attorney fees. *Johnson*, 2018 IL App (1st) 170732, ¶¶ 25-26. Lastly, breach of fiduciary duty cannot be an alternative theory where

---

[5]Krislov & Associates was the counsel in *Johnson* who petitioned for attorney fees under the Civil Rights Act. *Johnson*, 2018 IL App (1st) 170732,¶¶ 6, 8. Similarly, Clinton A. Krislov of Krislov & Associates represents plaintiffs on this appeal.

the complaint did not plead breach of fiduciary duty. For these reasons, we do not find a need to remand for determination of attorney fees.

¶ 57                                                    CONCLUSION

¶ 58        As this court has stated before, we are grateful for plaintiffs' service and empathize with plaintiffs' desire for affordable healthcare. However, the matter before us is a strictly legal one where the issues have already been decided by prior panels. To the extent that a different outcome is warranted, that is a matter for a higher court or the legislature. For the reasons already explained above, we affirm the trial court's grant of summary judgment in favor of the funds and the trial court's denial of plaintiffs' motion to amend its complaint. Also, we are not persuaded there is a need to remand for determination of attorney fees.

¶ 59        Affirmed.

¶ 60                                    APPENDIX

| Last Name | First Name |
|---|---|
| Abbey | Leon |
| Alongi | Rosemarie |
| Anderson | Donald G. |
| Anderson | Michelle |
| Andler | Robert |
| Andruzzi | Joseph J. |
| Angelo | Thomas |
| Antol | Robert P. |
| Augustine | Lawrence |
| Azara | John T. |
| Azzaro | Donald J. |
| Baker | Madelyn |
| Banahan | Dennis M. |
| Barreto | Nelson |
| Battistella | Irene C. |
| Battistella | John |
| Bellavia | Ronald J. |
| Berman | Barry |
| Blake | Marion |
| Blanc | Curtis E. |
| Blanc | Karen A. |
| Bobko | John R. |
| Bolda | Dennis J. |
| Bonk | James R. |
| Bonke | Fred |
| Borski | Anthony E. |
| Botwinski | JoAnne |
| Boyle | Leslie |
| Breska | Victor J. |
| Brockman | Ellwood W. |
| Brosnan | Patrick |
| Cagney | Edward C. |
| Caliendo | June G. |
| Camden | Patrick T. |
| Campion | William E. |
| Canchola | Donna J. |
| Canchola | Robert A. |
| Capesius | Michael C. |
| Carlo | Patricia |
| Carr | Elaine |
| Carroll | Paul B. |
| Cervenka | Richard G. |
| Chengary | Alan |
| Clancy | Patrick M. |
| Clark | Jeanne |
| Clarke | James R. |
| Clarke | Patricia S. |
| Clepp | Kathy |
| Clisham Sr. | John E. |
| Cole | Jon |
| Conlisk III | James B. |
| Conrad | Susan M. |
| Conrad | Walter A. |
| Considine | Joseph E. |
| Conway | Carol J. |
| Conwell | Hugh |
| Corcoran | John E. |
| Cowell | Raymond M.` |
| Coyne | Michael J. |
| Cronk | Virigina M. |
| Cunningham | James J. |
| Dalton | Tom |
| Danihel | William |
| Danzl | Joseph M. |
| Davis | William B. |
| DeCola | Salvatore L. |
| DeFrancisco | Peter J. |
| DeFranza | Donald |
| DeGiulio | William |
| DeGryse | James J. |
| DeVivo | Rosalie |
| Dicks | Kenneth |
| Dickson | Robert M. |
| Dorich | Gerald |
| Dragon | Dennis |
| Drnek | Donald |
| Droba | Gerard |
| Drummond | Richard L. |
| Drust | Wayne W. |
| Dubielak | Ronald |

| 82 | Dunn | Terrence L. |
|---|---|---|
| 83 | Dunn Sr. | Lawrence J. |
| 84 | Durbak | Andres |
| 85 | Dyckman | Barbara |
| 86 | Dyckman | Louis |
| 87 | Dziedzic | Dennis |
| 88 | Egan | William G. |
| 89 | Eichler | Thomas |
| 90 | Eldridge | James |
| 91 | Engelsman | Richard |
| 92 | Eshoo | John C. |
| 93 | Evanish | Francis |
| 94 | Everett | Daniel |
| 95 | Faragoi | Thomas V. |
| 96 | Farrer | Gerald L. |
| 97 | Faust | Robert |
| 98 | Ferriter | John T. |
| 99 | Ficke | Thomas R. |
| 100 | Fields | Robert M. |
| 101 | Finlayson | Donna M. |
| 102 | Finlayson | James R. |
| 103 | Flanagan, Jr. | Thomas J. |
| 104 | Flynn | Michael C. |
| 105 | Foley | Janice |
| 106 | Foran | John K. |
| 107 | Frank | Albert M. |
| 108 | Frederick | Arthur G. |
| 109 | Frost | Barbara C. |
| 110 | Fruin | James E. |
| 111 | Glowacki | Christine |
| 112 | Glynn-Johnson | Mary |
| 113 | Gneda | Diane |
| 114 | Gogliotti | Antoinette |
| 115 | Golczak | Anthony |
| 116 | Golon | William J. |
| 117 | Golosinski | Casimer L. |
| 118 | Gorski | Steven H. |
| 119 | Gottfried | Alan J. |
| 120 | Gould | David R. |
| 121 | Gray | Curtis |

| 122 | Green | Mary |
|---|---|---|
| 123 | Gunnell | Donald L. |
| 124 | Gutierrez | George |
| 125 | Gvozdenovich | Anthony |
| 126 | Hagele | Marvin |
| 127 | Hammermeister | JoAnne Connelly |
| 128 | Hammermeister | Raymond F. |
| 129 | Harper | Juana J. |
| 130 | Harrington | Patrick J. |
| 131 | Hartford | Joseph B. |
| 132 | Hatzel | Joseph |
| 133 | Healy | John |
| 134 | Healy | Lawrence |
| 135 | Heidemann | Fred G. |
| 136 | Heyden | Fran H. |
| 137 | Hopkins | James T. |
| 138 | Horkavy | Gregory L. |
| 139 | Horne | Ross |
| 140 | Hourihane | Michael |
| 141 | Hujar | Richard A. |
| 142 | Ippolito | Joseph C. |
| 143 | Ippolito | Patricia |
| 144 | Ivanjack | Anthony J. |
| 145 | Januszyk | Donald |
| 146 | Jazdyk | Raymond |
| 147 | Jin | Tony H. |
| 148 | Johnson | Harold F. |
| 149 | Julien | Patricia Lou |
| 150 | Kann | Vivian J. |
| 151 | Karl | Joyce L. |
| 152 | Keane | Carole L. |
| 153 | Kehoe | James G. |
| 154 | Keller, Jr. | Frank J. |
| 155 | Kelly | Francis |
| 156 | Kern | George "Steve" |
| 157 | King | Richard |
| 158 | King | Walter |
| 159 | Klauba | Bennet |
| 160 | Kleidon, Jr. | Walter A. |
| 161 | Kliner | Donald C. |

| | | | | | | |
|---|---|---|---|---|---|---|
| 162 | Kliner | Helen | | 202 | Milazzo-Triggs | Catherine |
| 163 | Klodnicki | John H. | | 203 | Miller | James |
| 164 | Knight | Evelyn F. | | 204 | Miller | John F. |
| 165 | Kobel | Richard | | 205 | Minich | John |
| 166 | Kocur | Thomas M. | | 206 | Mitkal | Victor |
| 167 | Kopbenhoefer | Charles | | 207 | Montedore | Ronald P |
| 168 | Kosteris | Dimitrios | | 208 | Morgan | Charles E. |
| 169 | Kotowicz | James F. | | 209 | Morgan, Jr. | Walter J. |
| 170 | Kouchoukos | Andrew F. | | 210 | Morley | Christine |
| 171 | Kozaritz | John A. | | 211 | Morse | Robert C. |
| 172 | Krupowicz | Kenneth G. | | 212 | Mostacchio | Santo V. |
| 173 | Kwiatkowski | Robert P. | | 213 | Mueller | Joan |
| 174 | Lambros | Kathleen | | 214 | Munoz | Luis |
| 175 | Lampard | Marilyn C. | | 215 | Murphy | Marie Irene |
| 176 | Leracz | Edmond | | 216 | Murray | Michael M. |
| 177 | Loftus | James R. | | 217 | Nagle | Jeffery Jon |
| 178 | Logan | Patrick | | 218 | Nakaguchi | Ann M. |
| 179 | Lorenz | John G. | | 219 | Nauer | Donald B. |
| 180 | Lotito | James M. | | 220 | Nieckula | Cynthia |
| 181 | Lucchesi | James | | 221 | Nork | Charles |
| 182 | Maderak | Terry | | 222 | Nyhan | Thomas P. |
| 183 | Madigan | Raymond | | 223 | O'Connor | Margaret |
| 184 | Madsen | Theodore J. | | 224 | Ogarek | Joseph |
| 185 | Majeske | Albert R. | | 225 | Olivieri | Edwin |
| 186 | Majeske | Carol | | 226 | O'Malley | Francis |
| 187 | Makowski | Karen A. | | 227 | Onesto | Philip |
| 188 | Maley | Muriel M. | | 228 | O'Reilly | Bernard |
| 189 | Manning | Jennifer | | 229 | O'Rourke | James A. |
| 190 | Maratto | Kathleen | | 230 | Oskielunas | Adam B. |
| 191 | Mares | Achilles | | 231 | Ott | Roy J. |
| 192 | Martin | Patrick | | 232 | Padar | James R. |
| 193 | Massi | John S. | | 233 | Palmer | Ronald A. |
| 194 | McCann | Kenneth J. | | 234 | Paolello | James |
| 195 | McCarthy | George | | 235 | Paoletti | Grayceanne |
| 196 | McFadden | Robert J. | | 236 | Paoletti | James M. |
| 197 | McGivney | John M. | | 237 | | |
| 198 | McQuaid | Michael J. | | 238 | Parizanski | Paul |
| 199 | Midona | Barbara A. | | 239 | Patt | Corinne |
| 200 | Midona, Sr. | Joseph A. | | 240 | Paulnitsky | Roland |
| 201 | Milam | Mary J. | | 241 | Pemberton | Patrick M. |

| | | | | | |
|---|---|---|---|---|---|
| 242 | Peron | Robert J. | 282 | Sebastian, Jr. | Roy D. |
| 243 | Perovich | Vladimir | 283 | Seils | Richard C. |
| 244 | Pizzo | Angeline | 284 | Selke | Jerome C. |
| 245 | Poedtke | Ronald | 285 | Seyfert | Eugene H. |
| 246 | Poholik | Peter F. | 286 | Seyfert | Judith A. |
| 247 | Polerecky | Robert E. | 287 | Shuman | Bernard |
| 248 | Pontrelli | Darlene | 288 | Signoretti | J. Robert |
| 249 | Ptak | Theodore | 289 | Sloma | Raymond T. |
| 250 | Quinn | Robert F. | 290 | Smith | Charles J. |
| 251 | Quinn | Sylvia A. | 291 | Smith | Deborah K. |
| 252 | Ratledge | Robert D. | 292 | Sobczyk | Jane |
| 253 | Reiter | Mark | 293 | Sowinski | Ronald |
| 254 | Retzke | Gery | 294 | Specht | Robert |
| 255 | Reynolds | Thomas A. | 295 | Spedale | Dominic |
| 256 | Rhoden | Dawn | 296 | Spratt | Doris |
| 257 | Rhoden | Ralph | 297 | Stampnick | Raymond L. |
| 258 | Rieck | Judith | 298 | Staszak | Norbert |
| 259 | Rimkus | Stanley | 299 | Steinmeier | Arthur M. |
| 260 | Rini | Victor | 300 | Strazzante | Charles M. |
| 261 | Riordan | Ann | 301 | Suess | Robert |
| 262 | Rodgers | Audrey | 302 | Sullivan | Michael T. |
| 263 | Rohloff | Richard P. | 303 | Sutor | Yvonne |
| 264 | Rooney Sr. | Patrick F. | 304 | Swiatkowski | Daniel |
| 265 | Roscich | Anthony M. | 305 | Szparkowski | Debra |
| 266 | Ross | Kenneth C. | 306 | Szparkowski | Gary |
| 267 | Rowan | Karen | 307 | Tapkowski | Roman |
| 268 | Rowan | Michael | 308 | Terrance | Timothy J. |
| 269 | Rowan | Richard | 309 | Thulis | John |
| 270 | Ruback | Charles R. | 310 | Tobuch | Lawrence J. |
| 271 | Rumsfeld | Alma | 311 | Tolley | John F. |
| 272 | Ryan | David | 312 | Tomaska | Joseph A. |
| 273 | Sappanos | Thomas | 313 | Tracey | Robert J. |
| 274 | Sarnowski | Ret. Sgt. Robert W. | 314 | Troken | Eugene B. |
| 275 | Sasso | Kathryn | 315 | Utz | Charles A. |
| 276 | Scalise | Anthony J. | 316 | Utz | James J. |
| 277 | Schrager | Daniel V. | 317 | Vitaioli | Kathleen |
| 278 | Schreiner | Angela M. | 318 | Vitaioli | Paul |
| 279 | Schultz | Marshall A. | 319 | Vogt | Vince |
| 280 | Schwab | John | 320 | Vucko | Ralph E. |
| 281 | Schwartz | Gerald | 321 | Wagner | Patricia M. |

| 322 | Webb | James E. |
|-----|------|----------|
| 323 | Webb | Laura M. |
| 324 | Weber | Matthew E. |
| 325 | Weiner | Ben |
| 326 | Welninski | Anthony |
| 327 | Whalen | Thomas Michael |
| 328 | White | Glenn L. |
| 329 | White | Ralph |
| 330 | Wiberg | Wayne A. |
| 331 | Winter | Joyce A. |
| 332 | Wolanski | John |
| 333 | Wolfe | Joseph |
| 334 | Woody | Lorraine |
| 335 | Yablong | Phil H. |
| 336 | Young | Phillip P. |
| 337 | Zolna | Clifford A. |
| 338 | Zurawik | James E. |
| 339 | Zurawski | James J. |

---

*Underwood v. City of Chicago*, 2025 IL App (1st) 231132

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 13-CH-17450; the Hon. Neil H. Cohen, Judge, presiding. |
| **Attorneys for Appellant:** | Clinton A. Krislov and Kenneth T. Goldstein, of Krislov & Associates, Ltd., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Mary B. Richardson-Lowry, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne M. Loose, and Aya R. Barnea, Assistant Corporation Counsel, of counsel), for appellee City of Chicago. |
| | Sarah A. Boeckman, of Burke Burns & Pinelli, Ltd., of Chicago, for other appellees. |